O’Brien, J. (dissenting.)
The facts found by the trial court in this case are not without evidence to sustain them. It is true that some of them are not established by the testimony of witnesses, but they could have been and were legitimately inferred from the conduct of the parties, their relations to each other, the contents of the various papers introduced and the circumstances surrounding the transaction. We must deal with the case upon the facts as they come to us from the special and general terms. The plaintiff is the committee of the person and estate of one Ebenezer Larmouth, a person of unsound mind, and as such he brings this action for the purpose of enforcing a trust and procuring an accounting from the trustee. Larmouth’s mother was for many years before her death the owner of a. farm of about forty-five acres of land in Washington county, and he was her only child and heir. On the 21st day of May, 1873, she executed a will containing these provisions:
*391 “ Second. Desiring to give my son Ebenezer Larmouth a good and sufficient support for and during his natural life, I do hereby give, bequeath and devise to my executor hereinafter named, and his successors, all my property which I shall own at the time of my decease, both real and personal, of every name and nature, in trust nevertheless, to receive the rents and profits thereof and apply them to the use of my said son Ebenezer Larmouth, during his natural life. Third. And further, I bequeath and devise to my pastor, Rev. Henry Gordon, all my property, both in personal and real estate, after the death of my said son Ebenezer Larmouth. Said property being the same as above bequeathed to my executor hereinafter named.”
She died on the 3rd of March, 1876, and the will was admitted to probate on the 11th of that month. While this instrument tends to show the intentions of the testator in regard to her son, it is of very little importance in this controversy in other respects, as the mother, before it became operative by her death, had recourse to another method of executing her purpose. This small farm seems to have constituted substantially her entire property, and on the 16th of October, 1874, about a year and a half before her death, she conveyed it to Gordon by warranty deed. It is stated in this conveyance that it was made “ in consideration of one dollar and other valuable considerations, to her duly paid,” but her purpose in making it is not otherwise expressed upon the face of the instrument. On the 19th of April, 1876, shortly after the death of Larmouth’s mother, the grantor in the conveyance, Gordon, the grantee, executed under seal, acknowledged and procured to be recorded in the clerk’s office of the county the following instrument :
“ Know all men by these presents: That because of certain real estate conveyed to me by Ellis McDonal, late of"the town of Jackson, Washington county, Hew York, I, Henry Gordon, of Coila, Washington county, Hew York, do of my own free will and accord hereby consider myself, heirs, executors or administrators, holden and firmly bound to appropriate or cause to be appropriated for the comfortable support of Ebenezer Larmouth, during his life, all the rents, after deducting necessary expenses, of said, real estate, or if said real estate should be sold the proper maintenance m board and clothing should be first lien upon said real estate during the life of said Ebenezer Larmouth, the subscriber to this bond distinctly asserts that its obligations on him are limited to the rents of said real estate, or to the interest on the purchase money, should said real estate be sold.”
The proper construction and legal effect of this instrument upon Gordon’s title to the land conveyed to him are the principal questions involved in this appeal. It furnished, as we think, the evidence of a trust in the land for the use of Larmouth during his life, and while the title was vested in Gordon, the trustee, the beneficiary of the trust could enforce its performance in equity, 1 R. S., 729, § 60, and that is the purpose of the present action. The statute provides that “no trust shall be hereafter created, granted or declared unless by act or operation of the law, or by deed or conveyance *392 in writing subscribed by the party creating or declaring the same.” 2 R. S., 134, § 6. But the next succeeding section, as amended by chap. 322 of the Laws of 1860, provides that § 6 shall not be construed to prevent “ any declaration of trust from being proved by any writing subscribed by the party declaring the same.” The conclusion of the courts below that there was a trust created by this instrument for the benefit of Larmouth, during his life, and that the trustee was bound during that period to appropriate the net rents or income of the land to the support of the beneficiary, was justified by the language of the paper and the provisions of the statute, as well as the authority of the adjudged cases. Wright v. Douglass, 7 N. Y., 564; Cook v. Barr, 44 id., 156; Van Cott v. Prentice, 104 id., 45; 5 N. Y. State Rep., 654.
The legal title, as already observed, was in the trustee, and he had power to convey the same, but as the declaration of trust was recorded his grantee was chargeable with notice of the trust, as the recording a¿ts embrace every instrument in writing by which the title to real estate may be affected in law or equity. 1 R. S., 762, § 88. On the 22d of January, 1877, Gordon and wife conveyed the farm to the defendant Davis. The consideration expressed in the deed is $500, and “ the covenants and conditions hereinafter contained.” It was stipulated in this conveyance that it was made subject to the conditions that Davis, the grantee, should provide and furnish Larmouth suitable clothing, food and necessary lodging, medical attendance and medicine, during his natural life, which conditions the grantee covenanted with the grantor to discharge and perform, and both parties to the conveyance mutually covenanted for themselves, their heirs, executors and administrators, that the support and maintenance of Larmouth should constitute and remain an “ indefeasible lien ” upon the land thus conveyed during his natural life. Thus the defendant Davis had actual as well as constructive notice that the land was bound by the trust to support Larmouth while he lived. It was claimed by Davis on the trial that his deed did not express the actual conditions upon which he took the conveyance. That the agreement between himself and Gordon when the deed was made was that he should support Larmouth on the premises and not elsewhere, and he asked in his answer that the deed in that respect be made to conform to the actual agreement of the parties to the same. This relief was refused by the trial court. Without examining the evidence for the purpose of ascertaining whether this claim was conclusively established as matter of fact, it is sufficient to observe that the trust upon which Gordon took the farm was not limited to the support of Larmouth on the premises, or at any other particular place, but to appropriate or cause to he appropriated, the net rents or income of the farm, or the interest on the purchase money in case of a sale, for his support generally. [1]
The obligations of the trustee were discharged only when the net rent or income of the land or the interest on the purchase money was actually paid to the beneficiary, or for his benefit, and he could not make this obligation conditional upon *393 the residence of Larmoutk upon the farm. He had no power to control his movements or dictate the place of his abode. The nature of the trust and the extent of the trustee’s powers were matters of which it must be assumed Davis had notice, and he could not discharge the burden and lien with which the land was charged by requiring the beneficiary of the trust to live with his tenants or in some other place that might be convenient or advantageous to him, but not agreeable or beneficial to the person in whose interests the trust was created. The trustee and his grantee could not by agreement between themselves, and without the consent of the beneficiary, fix the place of his abode, and relieve themselves and the land from the burden of his support unless he accepted it at such place, in such manner and upon such terms as they thought proper to prescribe. The defendants did not present any account of the actual receipts or income from the use of the farm, and it seems that they .left none. Under these circumstances the claim in favor of the beneficiary could not be determined in any other way. except by proof of the value of the net rents or income of the land. Much testimony bearing upon this question was given at the trial. As usual in such cases it is quite conflicting. The trial court found that the net receipts or income from the use of the farm was $175 per year. This would seem to be quite a large rental for so small a farm, but that was a question of fact for the trial court to determine upon all the proofs before it, and we are bound by the finding. The total net income at this rate per year, with interest thereon, was computed from March 3, 1876, when Larmouth’s mother died, to the date of the decision by the special term, and the whole sum, with interest, adjudged to be a lien upon the land, for the payment and satisfaction of which a sale thereof was directed, subject to the future application of the net annual income for Larmouth’s benefit during his life. In case the whole amount of the judgment was not realized from a sale of the land upon these conditions, the defendants, Gordon and Davis, were adjudged to pay the deficiency.
One of the defenses interposed by the defendants was that the action was- barred by the statute of limitations, and that point is still urged upon this appeal. The statute is not available to the defendants, as it does not begin to run in favor of a trustee against a beneficiary of the trust until the trustee has openly, to the knowledge of the beneficiary, renounced, disclaimed or repudiated the trust. Lammer v. Stoddard, 103 N. Y., 672; 1 N. Y. State Rep., 225; 1 Perry on Trustees, § 863; Kane v. Bloodgood, 7 Johns. Ch., 90; Angell on Limitations, § 166.
The only right that the beneficiary had was to enforce the per-' formance of the trust in equity, and an action for that purpose could be commenced under the provisions of § 388 of the Code of Civil Procedure at any time within ten years from default on' thes part of the trustee, and that period had not expired at the time this action was commenced. That portion of the judgment which subjects the net income of the farm in the future, during *394 the life of Larmouth, to his support follows necessarily from the nature and character of the trust impressed upon it by the owner. The charge upon the land is not necessarily measured by the sum which upon the proofs in this case was found to be the annual" value of the net income! It may be more or less, and can be determined only by an accurate account kept of the rental or receipts of the farm, less the necessary expenses incurred. When Gordon conveyed the land to Davis he took from the grantee a bond and mortgage for $400. Both of these instruments contain substantially a recital that they were given as security for the support and maintenance by Davis, his heirs, executors and administrators, of Larmouth during his life, according to the conditions and covenants contained in the deed from Gordon. The interest on this mortgage, amounting to twenty-four dollars, was paid annually by Davis to Gordon, and this seems to be all the income that came to the hands of the trustee. By his act, however, other parties were put in possession of the land, who were permitted by him to appropriate the income to their own use without any attempt on his part, so far as appears, to collect or appropriate it to the purpose contemplated by the trust, and in his answer he denies and repudiates the trust entirely. Having accepted the trust, he could not divest himself of its duties and obligations without the permission of the court Brennan v. Willson, 71 N. Y., 502.
The paper which Gordon executed and recorded was not only a sufficient declaration of the trust within the statute, and an election on his part to assume its duties and obligations, but the deposit of it in the clerk’s office was a sufficient delivery to entitle the plaintiff, as the committee of Barmouth’s person and estate, to claim the benefits of its provisions in his behalf. Davis, upon the execution of the deed by Gordon to him, took possession of the farm, rented the house and a part of the land upon an agreement with the tenant that he should support Larmouth on the premises in conformity, as is alleged, with the agreement between the parties to the deed, but which was not expressed therein. This provision for a person in his condition of mind was not such as was contemplated by the trust for his benefit. Being a person of unsound mind, he conceived himself to be the owner of the farm, and refused to live upon it with Davis, or his tenant, and wandering away was supported mainly by the charity of friends and kindred. This conduct on the part of the beneficiary did not discharge the land from the trust or the trustee from his duties and obligations.
It is now claimed by the defendants that in any event they were ■ not chargeable with the income of the farm during the year following the death of Barmouth’s mother, as he had the benefit of the farm that year. It is a sufficient answer to that point to say that there is no finding in the record upon which to base this con-, tention, nor did the defendants, or either of them, request the trial court to make any finding in regard to the use of the farm during that year. It was not suggested at the trial by any request or exception that the liability of the defendants for the use of the farm during that year stood upon any different ground *395 than their liability for all the years following it. Under these circumstances this court has no right to resort to an examination of the evidence to discover a ground to exempt the defendants from liability for a particular year; and, even if it had, the evidence on that point is conflicting, as Larmouth swore that he had received little or no assistance from the defendants or any one else during that year, and it is conceded that the farm was occupied and worked by others who had the benefit of what it produced. I cannot assent to the construction sought to be put upon the declaration of trust that it binds the trustee and his assigns to support the beneficiary on the farm, and not elsewhere. It plainly provides that the trustee will appropriate, or cause to be appropriated for the benefit of the beneficiary the net rents of the farm during his life and in case of a sale then the interest of the purchase money. This obligation remained always the same whether Larmouth was in the poor house, in an asylum or in charge of his friends and kindred. The refusal of Larmouth to live on the farm with the tenant of Davis furnishes no excuse to the defendants for failing to appropriate the rents for his benefit nor is it any obstacle to the right to maintain this action. The trial court has found upon evidence without conflict that on April 1, 1877, Davis with his tenant Plunkett took possession of the farm, removed Larmouth’s goods and furniture from the house, “ but the said Davis, through his tenant Plunkett, offered said Ebenezer board and lodging in the family and at the table of said Plunkett on said farm.” To say that the failure of Larmouth to accept this offer discharged the obligations of the defendants to appropriate the rents of the farm for his support and the lien upon the land would be, in my opinion, to place a most unwarrantable construction upon the instrument creating the trust. Moreover, it must be remembered that Larmouth was then a person of unsound mind. On the 28th of February, 1877, and before this offer was made to him by Plunkett, a jury duly summoned to inquire into his condition found that “the said Ebenezer Larmouth is of unsound mind and so far deprived of his reason and understanding as to be altogether unfit and unable to govern himself or to manage his affairs and has been in that state for at least seven years.” On the 20th of March, 1877, this finding was confirmed by the county court. It thus appears that at the very time that Plunkett offered to board him he was prima facie incapable of binding himself by any contract or other act. To hold that the conduct of this beneficiary at the time this offer was made, or at any time within seven years before, is any embarrassment to the right to maintain this action, is to sanction a rule unnecessarily harsh and unjust to an unfortunate person who is entitled to the special protection of the court.
For these reasons I am constrained to dissent from the prevailing opinion and am in favor of affirming the judgment, with costs.
Judgment of general and special terms reversed and new trial granted, costs to abide event.
Andrews, Peckham and Gray, JJ., concur; O’Brien, J., *396 reads for affirmance, with whom Euger, Gh. J., and Finch, J., concur.